Morning, Your Honors. May it please the Court, my name is Frederick Getz, appearing by appointment on behalf of Appellant CJ Bettis. Your Honors, this is a case that arises out of the seizure of a motor vehicle following a warrantless traffic stop not too far from here, just off of 94. The issue before the Court is that the duration of the traffic stop was unreasonable, therefore rendering the seizure unreasonable. As a predicate question to that is the issue of whether or not Mr. Bettis has standing to challenge that search because he was an authorized driver of a rental vehicle, the authorization coming from the authorized renter of that vehicle. When I say authorized driver, I want to make clear that was not from the rental car company, that was from the renter. That's the issue I would like to focus my remarks on this morning, leaving five minutes for rebuttal. The established Eighth Circuit precedent in the cases of Mohamed and Best are controlling on this issue. Those decisions are entirely consistent with the United States Supreme Court decision in the United States v. Byrd, the result of which that is if a driver of a rental vehicle is in lawful possession of that vehicle, then they have standing to challenge the search of that. And under Best and Mohamed, lawful possession includes when you have the permission of the authorized renter to drive that car. And that's what Mr. Bettis established in this case. The testimony and the findings of the district court, both the magistrate judge and Judge Wright, were consistent on that applying this circuit's clear law. Now the government is taking the position that there was no reasonable expectation of privacy because Ms. Daniels, that's Bettis' wife, was a straw man, that this was in fact a fraudulent rental because basically the government argued she was in on the drug dealing and knew that he was going to be using the rental car to drive drugs back from Chicago and this was all a fraud upon the rental car company. That's an interesting argument, but it's not supported by any factual findings below. The district court findings were, in essence, that Mr. Bettis was not an authorized renter, that he did not have a valid driver's license, and that Ms. Daniels used a false address to rent the vehicle. Now as a matter of fact, I think the record shows that the false address was an old address, it wasn't her present address, it was the address on her driver's license. But be that as it may, we'll accept the magistrate's terminology, false address. But there's nothing of those facts, those were the findings by the district court, that show that Daniels was a straw man for Bettis. There's nothing in those facts that show that Bettis was not in lawful possession because the entire rental was inherently fraudulent. What about the passenger? What was the position of the passenger with respect to the renter of the vehicle? And did the passenger have a driver's license? Did the facts tell us anything about the status of the passenger? To answer the driver's license question, the facts are silent on that. We don't know whether or not she was an authorized driver. I think we can speculate why the relationship between the passenger and the driver, she may have been the other woman, so to speak. Ms. Daniels certainly wasn't aware that she was along for the ride. But again, I don't think that the passenger's relationship to Bettis is anything more than, as the record established his testimony, or his statement, she was a friend. That's all we have. But Ms. Daniels' testimony as to her rental of the vehicle was clear. She rented that car for her own purposes. Counsel, in your view, does it ultimately matter if the record supports the straw man argument? I mean, I don't believe we've addressed that directly. My recollection is the Byrd court noted the possibility but didn't address that. Exactly. The references in Byrd to the straw man theory are indicta. The focus of Byrd is, of course, the lawful possession. That's the focus. And they hypothesized that there might be some sort of straw man situation where the entire possession would be rendered unlawful, the possession of the rental vehicle. I think the rental of the vehicle itself. But there's no evidence in this case, for example, from the rental car company, there was no representative saying, all right, given these facts, I can say now post facto that the entire rental was void. We never would have rented to Daniels. There's nothing like that in this case. What you have here is she was renting the vehicle for her own purposes. She was letting Bettis drive her personal vehicle. But when he went out of town for this funeral, because she didn't want to put mileage on her personal car, she said take the rental car. There was nothing, though she may have been involved on a peripheral basis, she was acquitted of that drug charge in the past. There was nothing showing she was involved in this drug dealing at that time. Also, there was no finding that her acquisition of the vehicle was fraudulent. Again, there was no evidence introduced at the district court, nor any finding by the district court that her using that old address rendered the entire rental fraudulent, that the rental car company wouldn't have done that. And Byrd focuses on whether or not the possession itself is lawful or not. And I think the government's conflation here is between the theories or the concepts of possessing a motor vehicle and operating a motor vehicle. You can possess something and possess a motor vehicle lawfully, but you can operate it unlawfully. But under the standing analysis, it's the lawful possession that this court must focus on and did focus on in Best rather than how the vehicle was operated. Remember, in Best, when this court remanded to the district court for a determination of whether or not the authorized renter gave Best permission to drive the vehicle, it knew that Best had a suspended driver's license. So he was operating, Best was operating that motor vehicle unlawfully. But did this court say, well, just because of that, we don't need to remand because we're going to find that it was an unlawful operation, therefore he can't have standing? No, that was not it. So I think, and again, I think that's consistent with this court's and the Supreme Court's analysis of cases where an owner of a vehicle is stopped and they might have a suspended or revoked driver's license. Well, if an owner of a vehicle doesn't have a valid DL, they're operating it unlawfully, but that does not take away their standing to challenge that. Arizona versus Gantt, United States versus Kennedy. So there was no evidence that this car was being operated in contravention of the rental agreement. We don't have that testimony. And to the extent there might be any breach of contract, and Berg talked about this extensively, a contract between a rental car company and the renter, those are matters of allocation of risk. You don't drive a car off-road. You don't drive a car beyond a certain geographic area because they're allocating risks. But allocation of risk is not the same and it doesn't pertain or apply to a possession analysis. So there is standing. Any questions of standing I think would have to be determined by a remand to the district court, which, of course, would only arise if this court agrees with me that the district court erred in denying the motion to suppress, and I ask that you do find that. In very short summary, the HERE officers had information that a car was, a renter car company was coming back. Bettis was driving it from Chicago to Minneapolis. They suspected there might be heroin in the car. They did not have probable cause to stop the vehicle. The reason the vehicle was stopped was for traffic offenses. Once the officer, the trooper, encountered Bettis, he developed probable cause on the scene based upon an odor of marijuana, inconsistent statements between the driver and passenger, and other indicia. He took the canine around. There was a positive alert. Dog went inside, went to the source of the odor, which was the center console, and detritus of marijuana was found there. Officers thoroughly conducted a roadside search, approximately an hour, I forget the exact time, but it was a thorough search at the road. At least two troopers were there. At that point, after the search, whatever probable cause they had was dissipated. It was gone. The officers had nothing more as a result of the search. That gave them probable cause then to continue the detention, which is exactly what happened when they drove it from the scene to the Hopkins garage for further examination, another dog sniff search, and then later the search pursuant to a warrant. And because probable cause had dissipated at the roadside, there was no probable cause to continue the detention, to continue the seizure, and it was unlawful. Thank you, Your Honors. Mr. Paulson, you may proceed. Good morning, Your Honors. So this case presents the question for the first time in this circuit, left open and bird, which is whether one who intentionally uses a third party to procure a rental car by a fraudulent scheme for the purpose of committing a crime is no better situated than a car thief. Well, counsel, what is the record evidence establishing the straw man theory? The record evidence is that she had been renting a series of cars for him. This wasn't the only one, like it was in bird. There was a series of cars over months. She knew he was a twice convicted drug dealer. She had actually been charged in one of the cases with him, although she was acquitted. So she knew well that he was twice convicted. She knew there had been two search warrants at the home they shared together where heroin was found. She knew he was unlicensed. That's important because defense is trying to say that because she gave him authorization to use the rental car, that's all that's required. But what she was doing was she was authorizing Mr. Bettis to commit a crime. I mean, suppose. Is there evidence of that knowledge? That he was unlicensed? So the crime you're talking about is the driving without a license. Well, there's two crimes. I mean, the big crime is she's authorizing him to use a car to go to Chicago to get heroin. What is the government's position that any time, say, a spouse has an expired license and the other spouse, I mean, you know the situation here. I mean, the expectation of privacy goes away because someone doesn't have a driver's license in that case? That seems, I'm not saying it's right. It strikes me initially as problematic. Well, suppose a situation where the wife watches the husband down a dozen beers and knows that he is dead drunk and then authorizes him to go drive her car. Would that authorization be valid such as to confer additional rights on the husband that did not otherwise exist? My argument is no. Such authorizations ought to be deemed void as against public policy. So when she, in this case, authorizes him to commit a crime by driving her car without a license, that authorization ought to be deemed void as against public policy, and it ought not to confer additional rights on Mr. Bettis, i.e. standing, that he would not have had absent the authorization. Let me ask you this. If we rule for the government on the merits on the probable cause issue, are we required to address the standing issue? No, you're not required to. The district court could have bypassed standing as well and gone right to the merits. That happens a lot. But the reason I'm stressing it in this case is because Byrd changes the landscape. Prior to Byrd, all that one needed to do was bring in someone to say that I let the suspect use my car, whether it's a rental car or a private automobile. Byrd says, no, that bright-line test, we don't think that's a good bright-line test. We think it's a more nuanced analysis, and we want to give an opportunity on remand for the government to pursue its claim that this was a fraud. So is it your view that the Supreme Court has overruled Best and Muhammad in Byrd? Well, they didn't explicitly do so. And I agree that their comments were dicta, but they did remand in that case for the government to pursue these avenues. And I think it's important for this court to give some guidance for future cases. I mean, this is a recurring problem. But, so, let me see if I understand clearly the argument. Here you say that because the renter of the vehicle allowed Mr. Bettis, an unlicensed driver, to operate the vehicle, then he, by virtue of that, he's no longer within the category of people that would have standing. Yeah, that's one of the reasons. But let me just flesh that out a little bit. Suppose we have the same fact pattern, but Ms. Daniels had driven him to Chicago and back, and then they got stopped, but she's driving. Mr. Bettis, as a mere passenger in someone else's car, would have no standing to challenge the search. So the anomaly is because he violates the contract and because he violates the law by driving the car himself as an unlicensed driver, now he's better off than if he hadn't violated those two things. I think that's an anomalous result. But getting back to the question of fraud, there was fraud in the inception of this rental because she admitted, Ms. Daniels admitted at the motion hearing, that one of the reasons she didn't put Mr. Bettis' name on the rental contract is because they would charge her more. So what was she trying to do? She was trying to defraud the rental company. I don't want to pay more. I want to pay less. And she was renting from Payless, so I guess that's appropriate. So that's fraud. Isn't standing more a recognition of something akin to kind of a property interest rather than looking at the legality of the operation of the vehicle? It's more an inquiry into that vehicle as a piece of property and who has some interest in it sufficient to give them standing when a search is conducted. And so we look at, well, who was authorized to legally have possession of the vehicle? So the company owns the vehicle. They gave temporary permission to Ms. Daniels to use it but not to anyone else. And if they had told the truth, if Ms. Daniels had told the truth when she went in to rent this car, oh, by the way, I'm going to let my husband use it, and oh, by the way, he doesn't have a license, there's no way the company would have agreed to that. So what the defense is saying is that Ms. Daniels can confer a right on her husband to use the car that the rental company never gave her in the first place. Well, if she had told the rental company that it was going to be used to transport drugs, do you think they would have rented it to her? No, no, that's part of the fraud. Is that the law, that if there's misrepresentation to the rental car company, then no one that subsequently operates or has possession of the vehicle can have standing to object to a search or to assist a search? Yeah. Is that the law? Well, I don't think it's the law in this circuit right now, which is why I'm pressing this issue. Up until now, it's just all the evidence. Is it the law anywhere that if the renter of the vehicle rents it for an illegal purpose, that that eliminates an argument of standing for anyone that subsequently drives the vehicle, including the renter? That's the argument I'm making. That's the argument that I believe. But is that the law in any place? The Byrd case from another circuit, for example, that shows that in the law. Well, I do have a case post-Byrd where they held that the defendant had no standing. I'm asking. I haven't looked at that myself, and I'm just curious if you found a case that focuses on the rental agreement and whether the authorized renter rents a vehicle for an illegal purpose, what the impact of that is. Yeah. So the case I found, the only one I found so far, the district court in Atlanta said that there was no standing because when the person rented the vehicle, he used a counterfeit identification card and a credit card in the name of somebody else. That was enough for fraud just by itself, and here we have much more than that. I mean, as I said, she committed fraud because she wanted to get a lower price. Counsel, when the Byrd court is discussing this issue and it doesn't decide it, you know, the issue that they're working with is, on the one hand, the stolen car, right? And the court raises the question here about, well, it may be that someone who engages in this straw man conspiracy rises to the level of essentially stealing the car. Correct. You're talking about giving the car to someone who doesn't have a driver's license. That strikes me as a very different not rising to the level that the Supreme Court was just commenting on of similar to stealing the car would be giving the car to someone who doesn't have a valid driver's license. So it's a continuum. On the one end, we know that just violating the contract that says you have to be an authorized driver isn't enough to defeat standing. On the other hand, if it's a stolen car, you absolutely don't have standing, and everything else in the middle is a continuum. But let me remind you that the burden is always on the defendant to establish standing. It's not the burden on the government to negate it. So what I'm proposing is what this court do is issue a ruling that says that post Byrd, it's not enough just to come in and say that I had permission from the renter to drive this car. It's got to be valid permission. It's got to be permission for a legitimate reason. And it's up to the defendant to come in and prove that the permission that there was no fraud in the inception, that the rental company wasn't defrauded, and that would include proving that the person I'm going to loan the car to is someone that the rental company would have let me loan the car to if I told them about it. And under a test like that, this defendant could not establish standing because his wife admitted that she knew he was unlicensed, number one, didn't tell the rental company that. Number two, she admitted she deliberately didn't put his name on the lease because she'd have to pay more. So she admitted to defrauding the rental company in two ways. And standing ought not to be automatically granted just on the basis of her coming in and saying, well, I gave him permission to use the car. That shouldn't be enough post bird because the Supreme Court has really called into question the validity of that line of cases. And I think at a bare minimum, this court ought to analyze that in its opinion, whether you can affirm on any ground. You could say that based on your de novo review of the record and the admissions that Miss Daniels made at the motions hearing that in your judgment, there's no standing here. You could do that, or you could just go directly to the merits and affirm on that ground. But I really think there ought to be some guidance to the lower courts in the future post bird and kind of warning defendants that it's not enough anymore just to bring in the renter to say, I authorized this person to use the car. Counsel, what about the second search? What's the primary? What's the principal reason that the second search was constitutional? Because the first search was insufficient. It was done on the side of a busy freeway I-94 at rush hour and gathering darkness that had to be done by flashlight. And both the magistrate judge and the district court judge said that they couldn't do a thorough enough search. It was reasonable to impound that car and take it to a garage where you could do a more thorough search. And this procedure is totally authorized by this court's decision in the Oliveira-Mendez case. Our facts are even better because in Oliveira-Mendez, this court allowed a second search after the vehicle was removed to another location, even though that second search was without a search warrant. In this case, the vehicle was removed to another location. A dog was run by it the next day, still alerted positively to the odor of narcotics coming from that vehicle. And then the agents took the extra precaution of going and getting a search warrant, a search warrant which fully disclosed the circumstances, including the prior search. And that search was authorized by a judge. So even if you were to conclude that their probable cause was lacking, the Leon Goodfaith exception would kick in. But probable cause was not lacking. There was far more probable cause here to continue the search than there was on Oliveira-Mendez because we showed at the motions hearing that the investigators knew all about Mr. Bettis' past drug trafficking. He was twice convicted. They knew his M.O. was to go to Chicago and bring heroin back in cars. And when they stopped him, first thing he did was give a false name. Second thing that happened is that he and his passenger gave mutually inconsistent stories about what they were doing in Chicago. Then they find marijuana in the car. Marijuana is often used to throw off the drug detection dogs because it overwhelms the dog's senses. And I could go on, but I only have three seconds left. And the point is that there was ample probable cause to impound this vehicle. Mr. Bettis' rights were not infringed when the impoundment occurred because they couldn't give him the car back anyway. He wasn't an authorized driver, and he didn't have a license. So they couldn't give the car back to him. They had to impound it. Thank you, counsel. How much time does Mr. Goetz have remaining?  You may proceed. Thank you, Your Honor. And Judge Shepard, I think your focus is absolutely where it should be, and that's on the traditional concepts of property. That is what the Supreme Court, that is what this Court has focused on for many, many years in determining issues of standing, or put more, I think, properly, does a litigant have a privacy interest in the area searched? And the problem with the government's argument is, while they ask for clarity of this Court, what they're asking you to do is basically blow up the well-established law and put courts everywhere in a state of confusion and put us on a slippery slope where we don't know where we're going. And what I mean by that is, for example, if the government's argument is that the operation of the vehicle, if that's unlawful, in other words, the operation of the property or the way the property is used is somehow unlawful, does that take away standing? Now, Byrd looked to an apartment renter in terms of its analysis, and let me use that as an example. If you have somebody who has got an apartment and they have an overnight guest who happens to be a registered sex offender, well, that sex offender may be not somebody who could qualify for the lease themselves, but would anybody question that that sex offender, because they're a registered or rather an authorized overnight guest, would have standing to challenge a search of that apartment? They would. Absolutely. Even though they might not be able to rent the apartment themselves or maybe they were using the apartment for an improper purpose, but they would have standing. And the problem with the government's argument is, Judge Kobus, to follow up on some of your questions, if, for example, the owner of a motor vehicle gave the keys to somebody they knew were drunk or gave the keys to somebody who knew they didn't have a driver's license, in that case we're not dealing with a rental situation, we're dealing with an owner, but under the government's theory, the person that got the keys who didn't have a license, even though the owner gave them permission, they wouldn't have standing because the operation would be unlawful. And that argument focusing on operation is absolutely too long an established law. I think the law of the circuit is clear. You have the Best case, you have the Muhammad case. They're absolutely consistent with Byrd, and it gives litigants and the courts below clear guidance as to what we need to do or not do when we have questions of standing in rental vehicle cases. Lastly, on the Olivera-Mendez case, counsel indicated he could go on and on and on, but I think what I would focus on is all of those facts that the law enforcement gained to create probable cause to search the vehicle. It wasn't just a cursory search. This was an exhaustive search by at least two agents. And if the court has the surveillance video available or the dash cam video, you'll see how exhaustive it was. They tore apart everything, and they didn't find any drugs. And what distinguishes this case from Olivera-Mendez is, in that case, the first search they had indicia that there was a hidden compartment. So, in other words, they had indicia that drugs were somewhere else in that vehicle hidden away. In this case, the record showed that absolutely did not happen. Trooper Hagen, who testified, very experienced trooper, was looking for... You don't have much time left, but isn't it true, as mentioned by counsel for the government, that the vehicle could not be... Neither the driver nor the passenger could be allowed to take the vehicle away after this search that you described was completed. And that justified, in and of itself, the government taking, or the law enforcement taking possession of the vehicle, removing it to another location, and then eventually getting a search warrant? Doesn't that kind of eliminate any necessity of discussion of this issue that you're talking about? I think it's only partly true, because we don't know with the passenger whether or not she was able to take it away. The officers never made any effort to follow up. They never asked her if she had a valid DL. They never called the rental car company. And because towing the vehicle or taking... Again, it wasn't towed to an impound lot. It was brought to a police garage for subsequent search. But could the rental car company simply have been called and say, hey, we've got your rental car, come pick it up? Law enforcement had other options available than taking it into law enforcement custody. So I think that the necessity... The duration was continued to search, not to impound. Thank you. All right, Mr. Goetz, thank you. And before we complete proceedings on this case, the court wants to express its appreciation to you for serving as appointed counsel, in this case, under the Criminal Justice Act.